# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

AMANDA GRAY,

                Plaintiff,

v.                                                                           CIVIL ACTION NO. 2:13-cv-19746

C. R. BARD INC., et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion for Summary Judgment [ECF No. 47] filed by defendants C. R. Bard, Inc. ("Bard") and Tissue Science Laboratories Limited ("TSL"). The plaintiff has not responded, and the Motion is ripe. The defendants' Motion is **GRANTED** in its entirety and the plaintiff's claims are **DISMISSED with prejudice**.

### I.    Background

This action involves Oklahoma plaintiff, Amanda Gray. The plaintiff was implanted with PelviSoft Acellular Collagen BioMesh ("PelviSoft") in 2006. Am. Short Form Compl. [ECF No. 3] ¶¶ 1–11. This case against Bard and TSL resides in the Bard MDL, MDL 2187, one of the seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). The plaintiff alleges the following claims against the defendants: Negligence (Count I); Strict Liability Design Defect (Count II); Strict Liability Manufacturing Defect (Count III); Strict Liability Failure to Warn (Count IV); Breach of Express Warranty (Count V); Breach of Implied

Warranty (Count VI); and, Punitive Damages (Count VIII). Am. Short Form Compl. [ECF No. 3] ¶¶ 14.

The plaintiff has been proceeding in this matter *pro se* since 2018. Due to the complicated nature of multidistrict litigation and the plaintiff's previous efforts to comply with this court's orders, the court has been lenient in providing Ms. Gray multiple opportunities to meet discovery deadlines. Her case has been placed in three different pretrial "waves." Most recently in June of 2019, this court reassigned the plaintiff's case to "Bard Wave 10," allowing her a longer timeframe to meet pretrial deadlines. [ECF No. 29].

**II.      Legal Standard**

**A.  Summary Judgment**

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in

support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

The plaintiff failed to respond to the defendants' Motion, and the court, accordingly, considers the Motion for Summary Judgment as an unopposed Motion. The court does not, however, automatically grant an unopposed Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e). "[I]n considering a motion for summary judgment, the district court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Blackwell v. Ethicon, Inc.*, No. 2:12-CV-03155, 2017 WL 2884531, at *2 (S.D.W. Va. July 6, 2017).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir.1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir.1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were

originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir.1981); *Carlson v. Bos. Sci. Corp.*, No. 2:13-CV-05475, 2015 WL 1956354, at *2 (S.D.W. Va. Apr. 29, 2015). *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08–md–01968, 2010 WL 2102330, at *7 (S.D.W.Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as is the case here, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12–cv–05762, 2014 WL 202787, at *4 (S.D.W.Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, Ms. Gray received the implantation surgery in Oklahoma. Thus, the choice-of-law principles of Oklahoma guide this court's choice-of-law analysis.

Under Oklahoma law, "the rights and liabilities of parties with respect to a particular issue in tort should be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Brickner v. Gooden*, 525 P. 2d 632, 637 (Okla. 1974); *see also Hightower v. Kansas City Southern Ry. Co.*, 70 P. 3d 835 (Okla. 2003). Under these choice-of-law principles, I apply Oklahoma law. The plaintiff is a citizen of Oklahoma. Am. Short Form Compl. [ECF No. 3] ¶¶ 4–13. She underwent implantation of the PelviSoft product in Oklahoma. *Id.* Because the plaintiff resides in Oklahoma, any injuries suffered by her would have occurred in Oklahoma. There are no other states that have an apparent significant interest in this case. Thus, I apply Oklahoma substantive law.

### C. Federal Rules of Civil Procedure Rule 26

Federal Rules of Civil Procedure Rule 26(a)(2) governs the discovery disclosure rules for expert witnesses. The Rule requires parties to disclose "to the other parties the identity of any [expert] witness it may use at trial to present evidence." Fed. R. Civ. P. 26(a)(2). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case…." *Id.* The report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* If a party fails to obey a court order to provide discovery then the court may issue further just orders—such as, dismissing the action or proceedings in whole or in part. Fed. R. Civ. P. 37(b)(2).

### III. Analysis

The defendants' Motion for Summary Judgment turns on the issue of causation, which is a necessary element of all of the plaintiff's claims. The defendants argue that Ms. Gray has not produced an expert report, which Fed. R. Civ. P. 26(a) requires as a mandatory disclosure for every testifying expert witness. Defs.' Mot. for Summ. J. [ECF No. 47] 5. Defendants further argue that because the plaintiff has not produced a competent expert opinion that links PelviSoft to Ms. Gray's alleged injuries or that speaks to a design defect in the product, she has failed to offer even

a scintilla of evidence of causation. *Id.* And thus awarding the defendants summary judgment on her claims is appropriate. I agree.

Under Oklahoma law, "expert testimony is necessary to establish medical causation where injuries are of a character requiring skilled and professional men [and women] to determine the cause and extent thereof." *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1318 (N.D. Okla. 2000); *see also Krenek v. St. Anthony Hosp.*, 217 P.3d 149, 152 (Okla. Civ. App. 2008); *see also Volner v. Union Pac. R. Co.*, No. CIV 11-003-JHP, 2011 WL 6056552, at *4 (E.D. Okla. Dec. 6, 2011). The rationale behind this requirement rests on the idea that the trier of fact must have "sufficient technical and scientific evidence at his or her disposal to answer a scientific technical question of fact." *Parris v. Limes*, 284 P.3d 1128, 1133 (Okla. Civ. App. 2009).

Oklahoma applies this rationale to both negligence and strict liability theories of recovery. *See Alexander*, 98 F. Supp. 2d at 1319. For example, in *Krenek*, the plaintiff was not required to produce expert testimony in claiming that a hospital negligently failed to secure and supervise him while he sat in a wheeled chair in a shower, which allegedly resulted in him falling and striking his head and upper body. *Krenek*, 217 P.3d at 152. He did not need expert testimony because determining the origin of the injuries—broken ribs, bruises, and contusions—did not require a "degree of knowledge or skill not possessed by an average person." *Id*. In that case, however the court distinguished the plaintiff's obvious injuries from his other claims that the hospital's negligence contributed to his later development of pneumonia and pleural effusion. *Id.* These additional harms required expert testimony to survive summary judgment because determining their cause demanded specialized medical knowledge. *Id.*

Similarly, in *Alexander*, the plaintiff's claims for manufacturers' products liability, breach of implied warranty, and breach of express warranty all failed to survive the summary judgment

stage because the plaintiff did not provide "an expert qualified to render an opinion as to the cause of her injuries." *Alexander*, 98 F. Supp. 2d at 1318–22. In that case, the Oklahoma court commented that expert testimony was crucial to determine how the human body medically reacted to the device placed therein. *Id.* Absent that key testimony, there was no evidence of medical causation between the device and the injuries. *Id.*

In this case, the plaintiff has offered no competent expert opinion regarding causation, either general or specific, as to PelviSoft. The most recent deadline for the plaintiff to disclose testifying expert witnesses was August 19, 2019, and thus has long since passed. [ECF No. 29]. I recognize the difficulty of navigating multi-district litigation regarding products liability *pro se*. But *pro se* plaintiffs must still abide by the rules of discovery and must provide sufficient evidence for their claims.

At this time, the plaintiff has disclosed two expert witnesses: (1) Dr. Richard Liles, and (2) Dr. Greg Vigna. [ECF Nos. 36, 20–1]. Dr. Liles appears to have been retained by the plaintiff to prepare a life care plan for her related to her medical issues. [ECF No. 36]. He has not prepared and disclosed an expert report, as required by Fed. R. Civ. P. 26(a). Nor has the plaintiff produced any depositions, affidavits, or anything else prepared by Dr. Liles that outlines his opinions and theories of the case. Turning to the plaintiff's second expert, there is no evidence that the plaintiff has actually retained Dr. Vigna. And even if she has, the plaintiff has not produced an expert report, affidavit, or any other material prepared by him that speaks to medical causation. Therefore, after reviewing the record, I find that the plaintiff has not sufficiently disclosed a testifying expert or provided evidence of an expert opinion on causation.

Causation between the PelviSoft and the plaintiff's injuries is an essential element of each of the plaintiff's claims, regardless of the theory of liability. The absence of qualified expert

testimony in this case would allow the fact finder to engage in impermissible post hoc reasoning—(1) the plaintiff did not suffer the alleged injuries; (2) the plaintiff subsequently received the implant of PelviSoft; (3) the plaintiff then began to suffer injuries ergo PelviSoft's faulty design, manufacturing, warnings, or implantation caused the injuries. Although this line of reasoning is tempting to a layperson, it is too speculative. In Oklahoma, causation of complex medical diagnoses requires more than a mere temporal link between an implant and symptoms. As in the case of *Alexander*, where the plaintiff had to provide expert testimony on how the body medically responded to the device implanted therein, so too must Ms. Gray provide expert testimony on her body's reaction to the implantation of PelviSoft.

Ms. Gray reportedly suffers from several medical conditions and symptoms, each of which potentially have multiple etiologies. *See* [ECF No. 19]. Ms. Gray's injuries thus are more similar to the plaintiff's pneumonia and pleural effusion in *Krenek*—which necessitated expert testimony because they were of a character requiring skilled and professional knowledge to determine the cause and extent—than to the broken ribs the same plaintiff sustained from falling out of the wheeled chair. Without expert testimony, the plaintiff cannot provide evidence of specific causation on any of her claims. Therefore, the defendants' Motion for Summary Judgment [ECF No. 47] is **GRANTED** on all claims and thus the court **DISMISSES** the plaintiff's case **with prejudice**.

The Clerk is directed to send a copy of this Order to counsel of record and Ms. Gray.

ENTER: December 3, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE